IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAYER CROPSCIENCE AG and     :
BAYER S.A.S.,     :
     :
        Plaintiffs,     :
     :
     v.     :   C.A. 12-256-RGA
     :
     :
DOW AGROSCIENCES LLC     :
     :
        Defendant.     :

## MEMORANDUM OPINION

---

Travis S. Hunter, Esq., Wilmington, Delaware; Robert J. Koch, Esq. (argued), Washington, D.C; Attorneys for Plaintiffs Bayer Cropscience AG and Bayer S.A.S.

Steven J. Balick, Esq., Wilmington, Delaware; Peter A. Bicks, Esq. (argued), New York, New York; Attorneys for Defendant Dow Agrosciences LLC.

---

December 6, 2012
Wilmington, Delaware

*Andrew G. Andrews*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Defendant Dow Agrosciences LLC ("DAS") moves to dismiss this suit under both Fed.
R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(7). Plaintiffs Bayer Cropscience AG and Bayer
S.A.S. ("Bayer") filed a patent infringement suit against DAS. (D.I. 1). The seven patents-in-
suit claim a soybean technology known as a "Triple Gene Event," (*see* D.I. 9, p. 2; D.I. 11, p. 1)
which comprises three soybean genes genetically engineered for herbicide resistance. Bayer
alleges that DAS plans to commercialize the soybean technology in violation of its patent rights.

Bayer granted two licenses relevant to this litigation.[1] The first license was granted to
Stine Seed Farm, Inc. ("the Bayer-Stine License"). The Bayer-Stine License allows Stine to
commercialize soybean seeds containing the "Bayer Soybean Events." (D.I. 11, Exh. B at ¶¶
2.1.1, 2.1.2). This right is limited to brands owned by Stine or its affiliates and explicitly
excludes the right to sublicense. (*Id.* at ¶ 2.1.1). The second license was granted to an affiliate
of Stine, MS Technologies, LLC ("the Bayer-MS Tech License"). The Bayer-MS Tech License
grants MS Tech the right to "exploit" the soybean technology, although it may exclude the
commercialization rights granted to Stine.[2] (D.I. 11, Exh. A at ¶ 3.1.2). This would allegedly
allow MS Tech to conduct research and work with government regulators in relation to the
soybean technology, but would not allow it to sell or market the technology. (D.I. 22, pp. 37-
39). The Bayer-MS Tech License is also distinct from the Bayer-Stine license in that it allows
some sub-licensing. (D.I. 11, Exh. A at ¶ 3.1.2).

---

[1] The following discussion of the two license agreements is meant to give background and is not intended as a definitive interpretation of them.

[2] The Bayer-Stine License allows "affiliates" of Stine to commercialize the soybean technology, and MS Tech is an affiliate of Stine. MS Tech may thus be free to commercialize the soybean technology according to the Bayer-Stine License, but may not be allowed to sublicense commercially.

2

MS Tech in turn entered into an agreement with DAS, with MS Tech sublicensing its

licensed Bayer patent interests to DAS ("the MS Tech-DAS Sublicense"). (D.I. 11, Exh. C at ¶¶

4.1, 4.5). That agreement states that DAS received no greater rights as sublicensee than MS

Tech has as original licensee. MS Tech and DAS later amended the MS Tech-DAS Sublicense

to include collaborations arguably outside the scope of the original Bayer-MS Tech license. This

included a joint collaboration between MS Tech and DAS to commercialize the soybean

technology. (D.I. 21, Exh A at § 7). Bayer argues that it never granted MS Tech the right to

sublicense commercialization of the soybean technology in the first place, and thus DAS is not

protected from a patent suit by the MS Tech-DAS Sublicense. (D.I. 11, pp. 6-10).

DAS now moves to dismiss Bayer's complaint under Rule 12(b)(6) and Rule 12(b)(7),

arguing that (1) Bayer failed to state a claim for which relief can be granted, and (2) Bayer failed

to join and cannot join MS Tech, who is a necessary and indispensable party to the action.

## DISCUSSION

### I. Motion to Dismiss under Rule 12(b)(6)

DAS first moves to dismiss under Rule 12(b)(6), arguing that Bayer failed to state a claim

for which relief can be granted. When considering a motion to dismiss, the Court must accept as

true all well-pleaded facts of the complaint. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S.

639, 642 n.1 (2008). DAS argues that its actions in connection with the soybean technology are

validly licensed, and therefore, it cannot infringe Bayer's patents. This argument, however,

asserts a factual defense. It is not an attack on the pleadings and is misplaced within the context

of a 12(b)(6) motion. Bayer's claim for patent infringement "need only plead facts sufficient to

place the alleged infringer on notice as to what he must defend" to survive this motion. *See in re*

*Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1336 (Fed.

Cir. 2012); *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). DAS makes no

argument that Bayer failed to meet this standard. For this reason, DAS's motion to dismiss for

failure to state a claim is denied.

## II. Motion to Dismiss under Rule 12(b)(7)

DAS moves to dismiss under Rule 12(b)(7), arguing that MS Tech is both a necessary

and indispensable party who cannot be joined to this lawsuit. Rule 19 determines when joinder

of a particular person is required. This involves a three-part test: (1) the Court must determine

whether the absent party is a necessary party; (2) if an absent party is necessary, the Court must

then determine whether the absent party may be joined to the case; and (3) if the absent party

cannot be joined, the Court must determine whether the absent party is indispensable. *See HB*

*Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1190 (3d Cir. 1996). If the absent party

is indispensable, the action must be dismissed. *Id.*

The Court must first determine whether MS Tech is a necessary party to Bayer's

infringement suit.[3] An absent party is necessary if either, "(1) the present parties will be denied

complete relief in the absence of the party to be joined, or (2) the absent party will suffer some

---

[3] Bayer argues that Rule 19(a)(1) expressly excludes from the definition of a necessary party those whose joinder would deprive the court of subject-matter jurisdiction. Bayer argues that because the arbitration agreement between MS Tech and Bayer would divest the Court of subject-matter jurisdiction should MS Tech be joined to the case, MS Tech cannot be a necessary party and the motion should be denied. Bayer, however, misreads the rule. The cited subsection merely implies the absence of a necessary party whose presence would destroy subject matter jurisdiction should be analyzed to see whether that absent party is indispensable. *See Estate of McFarlin ex rel. Laas v. City of Storm Lake*, 277 F.R.D. 384, 390 (N.D. Iowa 2011). To hold otherwise would create an exception that swallows the rule. The Rule 19 analysis often occurs in diversity cases where an absent, nondiverse party has an important interest in the subject matter of the case, but cannot be joined because the absent party's joinder would destroy diversity jurisdiction. *See, e.g., Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993). According to Bayer, such a nondiverse party would render the Rule 19 analysis dead on arrival. The entire purpose of the Rule 19 analysis, however, is to analyze whether the case can go on without the absent party. It would thus be error to deny the 12(b)(7) motion because MS Tech's presence would divest the court of jurisdiction. Rather, the Court should analyze the possible harms flowing from MS Tech's absence.

loss or be put at risk of suffering such loss if not joined." *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998). DAS argues the latter--that MS Tech's absence will cause MS Tech to suffer loss or risk suffering loss. DAS argues that Bayer's suit will have the practical effect of shutting down MS Tech's collaboration with DAS to commercialize the soybean technology. DAS argues that MS Tech's financial investment in the collaboration is substantial and that MS Tech has an inherent interest in a suit that threatens the project. DAS further argues that MS Tech is the genuine target of Bayer's legal attack, as Bayer's ability to recover against DAS hinges on the allegation that MS Tech was never granted the right to sublicense commercialization of the soybean technology. DAS further points out that there is a risk of inconsistent judgments should MS Tech not be joined, and also that it has a right of indemnification from MS Tech. DAS concludes that Bayer only refrains from suing MS Tech in order to avoid triggering the arbitration provision in the Bayer-MS Tech License that would remove the patent infringement case from federal court. DAS argues that for these reasons MS Tech is a necessary party.

At first glance, it would appear that MS Tech's absence from this case indeed places it at risk of suffering significant losses. The amended MS Tech-DAS License makes apparent that there is significant ongoing collaboration between DAS and MS Tech to commercialize the soybean technology. Bayer seeks to shut that collaboration down. Party prejudice, however, is mitigated when the interests of the absent party are adequately protected by those who are present. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993); *Surgical Laser Technologies, Inc. v. Laser Indus., Ltd.*, 1991 WL 255827 (E.D. Pa. 1991). This is the case here. MS Tech's interests are aligned with DAS, and DAS is perfectly capable of protecting their joint interests. The prejudice DAS argues will befall MS Tech by virtue of its

5

absence will flow from the precise result that DAS seeks to avoid. Namely, DAS will use its litigation resources to legitimize the soybean technology collaboration with MS Tech. DAS will advance the position that the Bayer-MS Tech License grants MS Tech the right to commercialize the soybean technology and also to sublicense in furtherance of that effort. DAS is clearly a sophisticated consumer of legal services and has chosen able counsel in furthering its goals of this litigation. DAS will thus be competently advancing virtually the same legal and factual positions that MS Tech would advance if present. All of this strongly suggests that MS Tech's interests in the commercial development of the soybean technology are well-protected.

DAS also points out that MS Tech may be subject to a suit litigating these same exact issues should Bayer choose to file a later action against MS Tech. Arguably, this raises the possibility of inconsistent interpretations of the various licensing agreements and corresponding inconsistent judgments, making it important for MS Tech to be joined in the suit. Any suit between Bayer and MS Tech, however, would be subject to arbitration, as would, for that matter, any suit between DAS and MS Tech. Only the current dispute between Bayer and DAS is not subject to an arbitration clause, as there is no agreement between them. These arbitration provisions make it unlikely that the dispute would ever be resolved in a single venue, presenting a compelling reason to allow these two parties to litigate their differences without forcing MS Tech into the case. DAS has argued that the existence of the arbitration provisions is irrelevant as to whether MS Tech is a necessary party to the dispute, and further, no party has yet exercised the right to arbitrate, thus making it speculative to assume that the issues would necessarily be resolved in different venues. The Court, however, considers practical considerations when confronted with a 12(b)(7) motion. As a practical matter, it is not probable that these arbitration provisions would go unexercised should MS Tech join the case. The addition of MS Tech would

6

thus likely do nothing to lessen the risk of inconsistent judgments or to promote efficiency, as any dispute between MS Tech and one of the current parties would most likely be resolved within the arbitration setting. This mitigates the harm or risk of harm that would flow from MS Tech's absence. In addition, DAS's right to indemnification from MS Tech is not sufficient to render MS Tech a necessary party. *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

The Court's finding that MS Tech is not a necessary party is bolstered by the fact that MS Tech has not claimed an interest in this suit or moved to intervene despite being aware of the suit's filing. An absent party's decision to forgo intervention may indicate that the party does not deem its own interests substantially threatened by the litigation. *See United States v. San Juan Bay Marina*, 239 F.3d 400, 406-07 (1st Cir. 2001); *United States ex rel. Morongo Band of Mission Indians v. Rose,* 34 F.3d 901, 908 (9th Cir. 1994) (holding that, because the absent party "did not feel that it was necessarily in his interest to remain a party in this action," "it is inappropriate for one defendant to attempt to champion [the] absent party's interests").[4] As there is no personal jurisdiction over MS Tech, it cannot be forced into this case as a Defendant, but nothing prevents MS Tech from moving to intervene in this matter to protect its interests. If MS Tech itself does not feel that its interests are threatened by the litigation, there is no reason for the Court to second-guess that judgment.

For all these reasons, the Court denies DAS's motion to dismiss under Rule 12(b)(7).

---

[4] MS Tech assuredly has knowledge of this suit, as the MS Tech-DAS Sublicense requires those parties to "fully cooperate with each other in the defense of any [patent] infringement suit[.]" (D.I. 11, Exh. C at § 10.4(a)).