IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BAYER CROPSCIENCE AG, et al.,

Plaintiffs,

v.

DOW AGROSCIENCES LLC,

Defendant.

Civil No. 12-256 (RMB/JS)

**AMENDED** REPORT AND RECOMMENDATION REGARDING DEFENDANT'S
MOTION FOR FEES AND COSTS AS PREVAILING PARTY[1]

This matter is before the Court on defendant's "Motion for
Fees and Costs as Prevailing Party." (D.I. 317). Defendant's motion
was referred to this Court for a Report and Recommendation issued
pursuant to 28 U.S.C. § 636(b)(1)(B). The Court received the
parties' extensive briefs and recently held oral argument.

Plaintiff filed this patent infringement lawsuit on March 2,
2012. The Honorable Renée Marie Bumb granted defendant's summary
judgment motion on October 7, 2013. The Federal Circuit summarily
affirmed the decision on October 17, 2014. The issue now before
the Court is whether this is an "exceptional case" entitling
defendant to recover its attorneys' fees pursuant to 35 U.S.C. §
285. If the answer is yes the next step is to determine the amount
of fees to award.

---

[1] This Amended Report and Recommendation ("R & R") addresses non-
substantive typographical or clerical errors the parties brought to the
Court's attention after the Court issued its December 22, 2014 R & R. (D.I.
374).

For the reasons to be discussed, the Court respectfully recommends that defendant's motion be GRANTED in part and DENIED in part. Having managed the case for years and being familiar with everything that has occurred, and after exhaustively reviewing the proceedings and record before the District Court and the Federal Circuit, the Court is left with the firm conviction that this is an "exceptional case." Thus, the Court recommends that defendant's motion be granted to the extent it asks for a finding that this is an exceptional case pursuant to 35 U.S.C. § 285. The Court also recommends that defendant's motion be granted to the extent defendant asks for an award of substantial attorneys' fees. The Court recommends that defendant's motion be denied but only to the extent defendant asks for an award of fees for work done on the Bayer I lawsuit prior to June 29, 2012, the date the Bayer II complaint was served. Because Dow has incurred additional fees, the Court recommends that Dow be permitted to update its claimed fees if this Report and Recommendation is adopted. The net amount of attorneys' fees the Court recommends be awarded is **$5,761,936.79**.

Background

The background of this matter is set forth in detail in Judge Bumb's comprehensive decision granting defendant's motion for summary judgment. Bayer CropScience AG v. Dow AgroSciences, LLC, C.A. No. 12-256 (RMB/JS), 2013 WL 5539410 (D. Del. Oct. 7, 2013).

Rather than repeating what the parties already know, the Court incorporates by reference Judge Bumb's summary. The salient points will be highlighted along with a discussion of other matters not pertinent to Judge Bumb's decision but which the parties, but not necessarily this Court, deem relevant to the present motion.

Plaintiff filed its complaint in the District of Delaware on March 2, 2012 and alleged defendant violated seven patents. Complaint ¶ 8, (D.I. 1). The patents-in-suit claim a soybean technology known as a "Triple Gene Event," comprising three soybean genes genetically engineered for herbicide resistance. The litigation involves Dow's Enlist E3 ("E3") product. Bayer alleged that Dow planned to commercialize the soybean technology in violation of Bayer's patent rights. Although the case was originally referred to the Honorable Richard G. Andrews, on April 10, 2013, Judge Bumb was designated to hear the case. (D.I. 100). The case was referred to this Court the same date to handle case management, discovery, and other non-dispositive matters.

Dow presented a twofold defense to Bayer's complaint. First, Dow argued it did not violate Bayer's patents. Second, and more importantly as it pertains to the present motion, Dow argued it had a valid sublicense that authorized the conduct Bayer challenged. Dow filed a motion to dismiss on its sublicense defense which Judge Andrews denied on December 6, 2012. (D.I. 26).[2] Dow

_____

[2] Judge Andrews wrote: "DAS argues that its actions in connection with the soybean technology are validly licensed, and therefore, it cannot

filed its answer on December 20, 2012 (D.I. 29) and, as noted, shortly thereafter the case was referred to Judge Bumb and then to this Court to address case management, scheduling and other non-dispositive issues, including all discovery disputes. With the agreement of the parties the first phase of the case focused on Dow's contract defense. After extensive discovery was conducted on the issue, Dow filed its motion for summary judgment on May 9 2013 (D.I. 126) which was granted on October 7, 2013, and affirmed on appeal on October 17, 2014.

The facts as found by Judge Bumb reveal that in 2003 Bayer decided to divest itself of certain soybean assets. Consistent with that decision Bayer entered into a series of agreements in 2004 with Stine Seed Farm, Inc. ("Stine") and MS Technologies, LLC ("MS Tech"), under which Stine and MS Tech obtained certain assets and licenses for soybean technology. As Judge Bumb noted, two of the agreements are central to the case.

In the first key agreement, Bayer entered into an agreement with Stine under which Stine was granted a nonexclusive license to "market, distribute for sale, sell and offer for sale" soybean seeds containing "events" already made by Bayer, or new events made by or for MS Tech. In the second key agreement executed the same day, Bayer entered into an agreement with MS Tech titled

---

infringe Bayer's patents. This argument, however, asserts a factual defense. It is not an attack on the pleadings and is misplaced within the context of the 12(b)(6) motion." Dec. 6, 2012 Op. at 3.

"Acquisition Agreement of Certain Soybean Assets of Bayer CropScience S.A. and License Agreement" (hereinafter "Agreement"). Thereafter, in 2008, MS Tech entered into a series of agreements to cooperatively develop and sell E3. As part of those agreements MS Tech granted Dow a sublicense under the 2004 Bayer/MS Tech Agreement. Without getting into a detailed discussion of the language in the Bayer/MS Tech Agreement, the parties' central dispute involved whether Bayer granted MS Tech the right to commercialize under the Agreement. This dispute was critical because if MS Tech did not have the right to commercialize, then MS Tech could not sublicense that right to Dow. Bayer's second major argument was that MS Tech only had the right to sublicense M.S. Soybean Events and that E3 was not a M.S. Soybean Event. Bayer argued that E3 was not an M.S. Soybean Event because E3 was not made "by or for" MS Tech. With regard to Dow's arguments, Judge Bumb and the Federal Circuit emphatically held that Dow had the right to do what it was doing.

Because the parties insist it is relevant, the Court will briefly summarize the different proceedings to which they make reference. On December 3, 2010 Bayer filed its 2, 4-D lawsuit alleging that Dow infringed its '401 Patent ("Bayer I"). That case was referred to Judge Bumb and then to this Court to handle non-dispositive matters. On August 24, 2011, **Bayer** filed a motion for leave to amend its Bayer I complaint to add a claim that Dow

infringed seven additional glyphosate patents. (D.I. 39). When it opposed the motion Dow produced a copy of **the** 2008 sublicense. Bayer subsequently withdrew its motion to amend and later filed Bayer II on March **2**, 20**12**. On September 27, 2012 Judge Bumb granted Dow's motion for summary judgment in Bayer I holding that Bayer's patent did not cover Dow's product and that under Dow's construction Bayer's claim would fail as a matter of law. Bayer CropScience AG v. Dow AgroSciences LLC, C.A. No. 10-1045 (RMB/JS), 2012 WL 4498527, at *10 (D. Del. Sept. 27, 2012). The Federal Circuit affirmed the decision on September 3, 2013. See 728 F.3d 1324 (Fed. Cir. 2013).

Bayer filed another lawsuit against Dow in the Eastern District of Virginia on January 20, 2012. (Bayer III). Bayer alleged in that lawsuit that Dow infringed four patents relating to crops genetically modified to tolerate the herbicide "glufosinate." Dow Opening Brief ("OB") at 7. (D.I. 317). Dow argued it had a valid license to the patents. Id. After the Virginia case was filed the case was stayed and referred to arbitration before the International Chamber of Commerce International Court of Arbitration. See Bayer CropScience AG v. Dow AgroSciences LLC, C.A. No. 12-00047, 2012 WL 2878495 (E.D. Va. July 13, 2012).

Discussion

    1. "Exceptional Case"

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Prior to the Supreme Court's decision in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749 (2014), under Federal Circuit precedent, a case was "exceptional" "only if a district court either [found] litigation-related misconduct of an independently sanctionable magnitude or determine[d] that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" Id. at 1756 (quoting Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)). This standard changed after Octane Fitness was issued.

Octane Fitness sought to provide a more "flexible" approach and permits district courts to determine whether a case is "exceptional" on a case-by-case basis, considering the totality of the circumstances. Id. at 1756. The Supreme Court describes an "exceptional case" as one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. The Supreme Court cited a number of nonexclusive factors district courts may consider, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at

1756 n.6. Further, "[d]istrict courts may determine whether a case is exceptional in case-by-case exercises of their discretion, considering the totality of the circumstances." Id. at 1756. Because the exceptional case designation is guided by the district court's "better position[]" to decide the issue, the finding is committed to the sound discretion of the district court. Hishmak Inc. v. Allcare Health Management System, Inc., 134 S. Ct. 1744, 1748 (2014). Patent litigants are only required to establish their entitlement to fees by a preponderance of the evidence. Octane Fitness, 134 S. Ct. 1749, 1756.

As the case law has developed litigants have endeavored to show "exceptionality" in a variety of ways. Among the most commonly cited ways to establish exceptionality are: (1) establishing that the plaintiff failed to conduct an adequate pre-filing investigation or to exercise due diligence before filing suit (see, e.g., Yufa v. TSI Inc., C.A. No. 09-01315, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014)); (2) showing the plaintiff should have known its claim was meritless and/or lacked substantive strength (id.); (3) evidencing the plaintiff initiated litigation to extract settlements from defendants who want to avoid costly litigation (Summit Data Sys., LLC v. EMC Corp., C.A. No. 10-749, 2014 WL 4955689, at *3-4 (D. Del. Sept. 25, 2014)); (4) showing a party proceeded in bad faith (Pure Fishing, Inc. v. Normark Corp., C.A. No. 10-2140, 2014 WL 5474589, at *4 (D.S.C. Oct. 28, 2014)

(noting that bad faith is no longer required to support an award of fees but finding the plaintiff's position was not reasonable)); and (5) litigation misconduct (<u>Logic Devices, Inc. v. Apple Inc.</u>, C.A. No. 13-02943, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014)).

Dow is not arguing the case is exceptional because Bayer proceeded in bad faith. Dow is also not arguing that Bayer filed the lawsuit to extract a settlement. Instead, Dow is arguing Bayer should have known its complaint was meritless and lacked substantive strength, Bayer did not conduct an adequate pre-filing investigation and it did not exercise due diligence before filing suit, and Bayer engaged in litigation misconduct. Because Dow's arguments overlap and the Court must look at the "totality of the circumstances," the Court will collectively address defendant's arguments.[3] The Court's takeaway from its analysis is that the case is exceptional because it is exceptionally meritless and Bayer knew or should have known this before it filed its complaint. In addition, as the litigation progressed and it became apparent that Bayer's case was going nowhere, Bayer insisted on forging ahead while it unsuccessfully searched for a theory to defeat Dow's license or contract defense. The better and prudent course of action would have been to abandon the action.

---

[3] Frankly, it is not always clear to the Court where the line begins and ends between each of these arguments.

The Court agrees that simply because summary judgment was granted does not necessarily equate to the fact that the case is exceptional. Nevertheless, Judge Bumb's Opinion evinces her recognition that Bayer's claim was exceptionally weak. There is no other explanation for why Judge Bumb found that Bayer's arguments were built upon "contorted theor[ies]" and "conjectural conclusions" that "[d]id not trump … reality" and "amount[ed] to distraction." 2013 WL 5539410, at *7-10, 7 n.12, n.13. And, why Judge Bumb held "that the Agreement is subject to only one reasonable interpretation." Id. at *6 n.6. It is not insignificant that this ruling was issued after extensive discovery and after a 1½ day oral argument and hearing which included live testimony from the parties' experts on English law.

Further evidence that Bayer's case was exceptionally weak is the fact that Bayer's contract arguments were denied "for seven reasons" as "inconsistent with" and "contrary to" the "full context," "plain language," and "business purpose" of the key agreements. Id. at 7-8. Further, after Judge Bumb examined the "factual matrix and commercial circumstances surrounding the [relevant] agreements," she found that they did not "give rise to any ambiguity of the plain meaning of the agreements … and it [was] clear that the language contained in Section 3.1.2 of the Agreement [gave] MS Tech commercialization rights." Id. at *9 (citation and quotation marks omitted). Stated succinctly, the 2004 MS

Tech/Bayer Agreement was "subject to only one reasonable interpretation." Id. at *6 n.6. That is, that the Agreement granted MS Tech the right to commercialize soybeans under the asserted patents. Id. at *4, 6 n.6. This explains why Judge Bumb "poured over the record searching for objective evidence to support [Bayer's] arguments … [and she] … found none." Id. at *6 n.10.

By no means was just Bayer's commercialization argument exceptionally weak. Bayer's "by or for" argument relied upon improper extrinsic evidence and ignored the "crystal clear" testimony of Justice Mansfield, an outside counsel working on the transaction and now sitting as an Iowa Supreme Court Justice. Id. at *9. Further, the Court rejected Bayer's "conjectural conclusions" in favor of the clear understanding of the parties to the MS Tech and Dow contract that E3 was "made for" MS Tech. Id. at *10. Moreover, the transcript of the appellate argument before the Federal Circuit reveals that the panel thought so little of Bayer's "by or for" argument that it seemingly dismissed the argument out of hand and did not even give Bayer a meaningful opportunity to address the issue. Def. Supp. Br. (D.I. 358), Ex. B, Tr. 6:1-6. Given all of the foregoing, the Court reaches the inescapable conclusion that this is an exceptional case in the sense that it "stands out from others with respect to the [lack of] substantive strength of [Bayer's] litigating position

(considering both the governing law and the facts of the case)"[.] Octane, 134 S.Ct. at 1756.

One remarkable aspect about Bayer's arguments in opposition to Dow's license defense was their implausibility. Even **Bayer** does not dispute that it decided in 2003 to divest itself of its soybean assets. That being the case, it made no sense for Bayer to retain commercialization rights. That is why the **head of Bayer's divestment team** testified, "the best thing to do was to liquidate the value that [Bayer] currently had in [its] hands through the divestment process to other parties." Bayer II, 2013 WL 5539410 at *8 (citation omitted.); see also id. at **\*2** n.3 (summarizing the unrebutted extensive deposition testimony to the effect that **Bayer** was getting out of the soybean business). Indeed, plaintiff's expert concurred that divestiture does not include the retention of rights. Id. **MS Tech's corporate counsel** testified it was "ridiculous" to view the Agreement as a limitation on MS Tech's rights. Id. at 2 n.2. Nevertheless, despite its implausibility, Bayer's pursued an argument that led to the inescapable conclusion that Bayer retained certain rights even though it was divesting. This makes no sense. The Court agrees with Dow that Bayer's theories "demanded suspending reality … to find it credible that, in a 'divestment' of its IP and assets, Bayer retained valuable commercial rights to soybeans at the insistence of the beneficiaries of the divestment." OB at 3. This explains in part

why Judge Bumb rejected Bayer's "contorted theory to harmonize its construction of the contract[.]" Id. at *7 n.12.

Bayer's arguments were also implausible to the extent it argued that although MS Tech ($1 million) and Stine ($4 million) paid a significant sum of money for their licenses, MS Tech only had the right to sublicense development rights and not the right to commercialize. This argument also makes no sense. Bayer's position is also remarkable in the face of the language in the Bayer/MS Tech agreement where MS Tech was given the right to "exploit." As Judge Bumb noted, "it makes little sense to define 'exploit' broadly at the outset and use that term in Article 3.1.2, if the parties' intent for 3.1.2. was for MS Tech to have much more limited rights." Id. at *7.

Not only does the October 17, 2013 summary judgment decision show that Bayer's arguments were exceptionally weak, but this is also evidenced by the Federal Circuit's October 17, 2014 summary affirmance. Pursuant to Federal Circuit Rule 36, this procedure is used "only when the appellant/petitioner has utterly failed to raise any issues in the appeal that require an opinion to be written in support of the court's judgment of affirmance." D.I. 353, Exhibit A at 5. The transcript of the oral argument before the Federal Circuit (D.I. 353, Exhibit B) evinces the panel's skepticism of Bayer's arguments. Bayer's failure to articulate a reasonable basis for its interpretation of the relevant licensing

agreements evidences that its claim was objectively baseless. See Pure Fishing, Inc. v. Normark Corporation, C.A. No. 10-2140, 2014 WL 5474589, at *4 (D. Minn. Oct. 28, 2014).

Another remarkable aspect of Bayer's defeat is that much of Dow's best evidence came from the deposition testimony of Bayer's witnesses, not Dow's witnesses. Dow cites to a litany of deposition testimony from witnesses presently or formerly associated with Bayer, and not Dow, whose testimony supports the notion that Bayer's case was baseless. These witnesses include Margaret Keating, Esquire, **Bayer's** Vice-President and Associate General Counsel, David Morgan, Bayer's former Head of Agricultural Crops and head of Bayer's divestment team, and Bayer's Fed. R. Civ. P. 30(b)(6) witness (Schulte). Other witnesses who testified to the same effect were Justice Mansfield, Joe Saluri, MS Tech's corporate counsel, and Harry Stine, an officer of Stine Seed, who deemed Bayer's litigation "absolutely ridiculous." OB, Ex. N, Stine Dep. 52:2-4. If Bayer had conducted a modicum of due diligence before it filed its complaint it would have learned from these witnesses that its case was doomed. As another court wrote, "[p]atent litigation is a burdensome venture for all parties involved. Thus, plaintiffs must conduct careful investigation before bringing suit." Linex Technologies, Inc. v. Hewlett-Packard Company, C.A. No. 13-159, 2014 WL4616847, at *3 (N.D. Ca. Sept. 15, 2014); see also Lumen view Tech. LLC v. Findthebest.com, Inc., C.A. No. 13-

3599, 2014 WL 2440867, at *6 (S.D.N.Y) (finding the case to be "exceptional" because "the most basic pre-suit investigation would have revealed" that the infringement allegations had no merit); Kilopass Tech. Inc. v. Sidense Corp., C.A. No. 10-2066, 2014 WL 3956703, at *3-*4, *14 (N.D. Cal. Aug. 12, 2014) (concluding that the case was exceptional because the plaintiff's official "had already set their mind" that there was infringement and filed suit after "failing to conduct an adequate pre-filing investigation").

The Court has poured over the record to find evidence that Bayer's case had anything other than a "puncher's chance" of success. The Court has found none. Rather than citing to objective facts and colorable arguments, **Bayer's** opposition to the present motion is reminiscent of the obfuscation it practiced during the course of the litigation.[4] For example, Bayer argues it had a good faith basis to file its patent infringement complaint. However, whether this is true or not is beside the point. Bayer knew about and had copies of the key 2004 Bayer/MS Tech and 2008 MS Tech/Dow agreements when it filed its complaint. Bayer knew or should have known that its patent claim was undercut by the plain and unambiguous language in these agreements. In addition, **Bayer's** argument that the denial of **Dow's** motion to dismiss shows that its complaint was colorable is meritless. Pl.'s Opp. at 2. Judge

---

[4] Accord Bayer II, 2013 WL 5539410, at *8 n.13. ("While the Court has considered Plaintiff's arguments, they largely amount to distraction in the factual matrix.")

Andrews' Order did not address the merits of Bayer's claims. As noted in Yufa, supra, the fact that a plaintiff survives a motion to dismiss does not necessarily equate to the fact that the plaintiff's claim is colorable. 2014 WL 4071902, at *3 ("The pleadings stage does not require factual support . . . . That [plaintiff's] case survived the pleadings stage is not proof that he possessed evidence of infringement.").

Bayer's obfuscation is also evidenced by the fact that it ignores some of Dow's key arguments. For example, much of Dow's motion challenges Bayer's failure to conduct any due diligence before it filed its complaint. Bayer is silent on the issue. Also, Bayer did not and does not explain why it did not talk to key individuals.[5] These were not adverse witnesses or witnesses presently or formerly employed by Dow. These are witnesses who easily could have been contacted with a phone call. If contacted these witnesses would have confirmed to Bayer that its infringement claims against Dow were meritless because of the relevant licensing agreements. As noted, if Bayer had exercised a modicum of due diligence it would have recognized that its complaint was going nowhere.

Bayer's obfuscation is also evidenced by its argument that its complaint was justified by the fact that Dow did not produce

_____

[5] Keating testified that **Bayer's** due diligence amounted to two brief telephone calls, no written analysis, and no involvement of outside counsel. OB at 12.

the 2011 amendment to the MS Tech/Dow sublicense until November 20, 2012. Bayer's argument that the 2011 sublicense "served as the cornerstone for Dow's defense" and that "it is the most relevant document to Dow's 'sublicense' defense" (Pl.'s Opp. at 2) is frivolous. The 2011 amendment played no part in the summary judgment decision. By raising the date the 2011 amendment was produced, Bayer raises a strawman and then attempts to knock it down. Bayer essentially posits it could not have known Dow had a strong contract defense until it received the 2011 amendment in November 2012. However, the fact of the matter is that the 2011 amendment was irrelevant to the summary judgment decision. The amendment is not mentioned in Judge Bumb's decision nor was it mentioned at oral argument before the Federal Circuit. Further, the key language at issue is contained in the 2004 Bayer/MS Tech and 2008 MS Tech/Dow agreements. Bayer acknowledges it had copies of these agreements before the complaint in this action was filed.

Having failed to cite to evidence in the record to support its positon that this is not an exceptional case, Bayer resorts to citing to other proceedings that are irrelevant to the motion before the Court. Bayer's references to its ongoing arbitration with Bayer (i.e., Bayer III) have no place here. That proceeding addressed Dow's 1992 License Agreement which was being decided under French law. That agreement was not part of this case. Further, although Bayer argues it was successful at the

arbitration, all parties acknowledge that the decision was "tentative" and non-binding. The Court will not give the arbitrators' non-binding decision any weight when it does not know who decided the matter, the record before the arbitrators, and any procedural or evidentiary constraints put on the parties' and arbitrators. Bayer's acknowledgement that <u>Bayer III</u> is irrelevant is evidenced by the fact it did not raise <u>Bayer III</u> in its appeal to the Federal Circuit.[6] Nor has Bayer moved to undercut Judge Bumb's summary judgment decision by citing to <u>Bayer III</u>. The issue presently before the Court is whether this is an exceptional case, not what happened in the parties' arbitration.

The weakness of Bayer's attempt to show it had a colorable basis to pursue its case is also evidenced by the fact that it relies on documents not part of the summary judgment record. Pl.'s Reply Br. at 9-10 (D.I. 345) (citing Bayer's attempt to use Dow's regulatory filings and patent markings and the 2011 contract amendment as new bases to support its theories). If these documents had any relevance they would have been brought to the attention of Judge Bumb and the Federal Circuit. Further, Bayer's efforts to show that Dow has "unclean hands" is an unneeded distraction and is irrelevant. Pl.'s Opp. at 5. The Court is focusing on whether

---

[6] Bayer hints that the decision undercuts the validity of the grant of summary judgment. Pl.'s Opp. at 5. The argument is completely meritless as shown by the fact that Bayer has never moved to undercut the decision.

this is an exceptional case and does not intend to referee the parties' "name calling."

In sum, based on the totality of the circumstances described herein the Court finds that Bayer's claim was so plainly non-meritorious that no reasonable party or attorney could realistically expect success. Bayer's complaint should not have been filed. The exceptional nature of the case is compounded by the lack of pre-suit due diligence. The fact that Bayer had at best a "puncher's chance" of success does not take the case out of the realm of being an exceptional case.[7]

2. Attorneys' Fees

As a threshold matter the parties do not dispute that Dow is a prevailing party. Having found this case is exceptional, the Court turns to determining the reasonable amount of attorneys' fees to award. Reasonable attorneys' fees are computed by multiplying the reasonable hourly rate by the reasonable number of hours expended, i.e., the lodestar. As of November 17, 2014, Dow seeks total fees in the amount of $5,857,639.28 (which includes the cost of defending Bayer's appeal and preparing its fee

_____

[7] Dow spends much of its brief arguing that Bayer's litigation misconduct makes this case exceptional. Because the Court is so convinced that the lack of strength of the merits of the case combined with Bayer's failure to exercise due diligence makes the case exceptional, the Court does not see the need to "pile on." Therefore, the Court will not address Dow's contention, inter alia, that Bayer (1) engaged in forum shopping and gamesmanship regarding the service of its complaint, (2) regularly shifted its theories in this case and Bayer III, and (3) filed a meritless preliminary injunction motion.

petition) for its work from August 2011 through the oral argument on the present motion. Included in this amount is fees incurred in Bayer I.[8] The time expended in Bayer I will be deducted from Dow's fee award because those fees were not incurred in defending this litigation. Therefore, the Court will deduct $95,702.49 from the total amount requested by Dow.[9]

In Bates v. Board of Education of the Capital School District, C.A. No. 97-394, 2000 WL 1292677, at *2 (D. Del. Aug. 29, 2000), the court articulated four factors courts should consider in determining whether a fee application is reasonable: (1) whether the documentation submitted adequately supports the hours claimed by the attorneys; (2) whether the hours claimed were reasonably expended; (3) whether the attorneys' hourly rates are reasonable; (5) whether reductions are appropriate; and (5) whether the applicant's request for other costs is reasonable. Philips Electronics N. Am. Corp. v. Compo Micro Tech, Inc., C.A. No. 02-123, 2006 WL 3020724, at *2 (D. Del. Oct. 23, 2006) (citing Bates,

---

[8] Bayer sought to amend its complaint in Bayer I to cover the claims litigated in Bayer II. The Bayer II complaint was served on June 29, 2012.

[9] Within the affidavit of Peter A. Bicks, Esquire, is a table which "includes fees for the work carried out in responding to Bayer's request to amend its complaint in a prior action [Bayer I] to add, then withdraw, the claims that were ultimately the subject of this lawsuit[.]" Aff. of Peter A. Bicks (D.I. 323). After analyzing the bills noted on the chart it appears that the first four bills correspond to fees incurred in Bayer I. The total amount of these four bills is $95,702.49. Therefore, $95,702.49 will be deducted from Dow's fee request.

2002 WL 1292677, at *2). The Court will consider each factor in turn.

a. Adequate Documentation

Dow has submitted its billing records from August 2011 to present.[10] Dow has submitted for the Court's _in camera_ review unredacted line-item billing and time records which include the date its work was performed, by whom, a detailed record of the work performed, and the hours expended. Additionally, Dow has provided charts summarizing costs and fees by month throughout the course of the litigation. Based on these submissions, the Court finds the documentation is adequate.[11]

b. Hours Reasonably Expended

Dow has submitted detailed bills documenting the fees claimed. Bayer has not made any specific objections to Dow's fees. Rather, Bayer simply characterizes Dow's requested fees as "unreasonable and excessive." Bayer Opp. Br. at 29. (D.I. 335). In the Third Circuit, a district court may not reduce attorneys' fees _sua sponte_ because they are excessive, redundant or otherwise unnecessary. United States v. Eleven Vehicles, Their Equip. &

---

[10] Dow's counsel includes Orrick, Herrington & Sutcliffe LLP, a New York firm, and Ashby and Geddes, P.A., Dow's local counsel in Delaware.

[11] Bayer argues it is entitled to review unredacted bills. Bayer Opp. at 28. The Court has reviewed the redacted versions of the billing records and compared them to the unredacted versions. The Court finds the redacted bills adequate for Bayer to have evaluated the reasonableness of the fees requested. See, e.g., Floe Int'l, Inc. v. Newmans' Mfg. Inc., C.A. No. 04-5120, 2006 WL 2472112, at *7 (D. Minn. Aug. 23, 2006) (ordering fee petitioner to produce redacted billing records to non-prevailing party in patent case).

_Accessories_, 200 F.3d 203, 212 (3d Cir. 2000); _Smith v. Astrue_, 843 F. Supp. 2d 486, 490 (D. Del. 2012) (accord); _Ongay v. Astrue_, C.A. No. 09-0610 (RMB), 2011 WL 2457692, at *2 n.3 (D. Del. June 20, 2011). Indeed, "when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason [exists] for permitting the trial court to disregard uncontested affidavits filed by a fee applicant." _Id._ (citing _Cunningham v. City of McKeesport_, 753 F.2d 262, 266 (3d Cir. 1985)). The justification behind this policy is two-fold. First, a _sua sponte_ reduction by a court deprives the fee applicant the right to offer evidence in support of the reasonableness of the request. _Id._ (citation omitted). Second, in adversarial litigation, "there is no need to allow the district court to reduce a fee award on its own initiative." _Id._ (citation omitted). In short, since Bayer raises only "generalized conclusory objections" to the time claimed by Dow, the Court may not award less in fees than requested by the fee petitioner. _Chaaban v. Criscito_, C.A. No. 08-1567, 2013 WL 1737689, at *14 (D.N.J. Apr. 3, 2013) report and recommendation adopted, C.A. No. 08-1567, 2013 WL 1730733 (D.N.J. Apr. 22, 2013) (citing _Eleven Vehicles_, 200 F.3d at 211). As such, the Court will not _sua sponte_ make an adjustment to the total number of allowable hours claimed.

c. Reasonable Hourly Rate

In determining the reasonable hourly rate courts look to the "prevailing market rates in the relevant community." Steiner v. Hercules Inc., 835 F. Supp. 771, 786 (D. Del. 1993). "Reasonable hourly rates for purposes of the lodestar calculation should generally use the rate of the forum court." Chalumeau Power Sys. LLC v. Alcatel-Lucent USA Inc., C.A. No. 11-1175, 2014 WL 5814062, at *1-2 (D. Del. Nov. 6, 2014) (citing Bywaters v. United States, 670 F.3d 1221, 1233 (Fed. Cir.), reh'g denied, 684 F.3d 1295 (Fed. Cir. 2012)). The Federal Circuit recognizes a narrow exception to this rule where "no local attorneys possess the 'special expertise' necessary to take the case or that no local attorneys were willing to take the case." Bywaters, 670 F.3d at 1234. Certainly, the Delaware legal community is not wanting of intellectual property expertise. Thus, the narrow exception to the forum rule does not apply. Therefore, the forum rate in this matter must be governed by the rate for Delaware intellectual property attorneys and not New York. See Chalumeau Power Sys. LLC, 2014 WL 5814062, at *1-2 (applying Delaware rates where attorneys were located in Boston).

Based on Third Circuit precedent, and since Bayer has not challenged Dow's rates, the Court declines to conduct an independent analysis as to whether the hourly rates requested are reasonable in the Delaware intellectual property community. See Phillips Corp. v. Compo Micro Tech, Inc., C.A. No. 02-123, 2006 WL

3624022, at *3 (D. Del. Dec. 12, 2006) (summarily accepting hourly rate requested by prevailing party in "exceptional case" where rate was not challenged); Summit Data Sys., LLC v. EMC Corp., C.A. No. 10-749, 2014 WL 4955689, at *5 (D. Del. Sept. 25, 2014) (summarily awarding attorneys' fees of $1.3M in "exceptional case"). Given the ferocity of this litigation and the amount claimed, if Bayer had a legitimate basis to object to Dow's billing rates it would have raised an objection. Thus, Dow's billing rates will be applied.

d. Appropriate Reductions

Adjustments of the lodestar calculation upward or downward "are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." Bywaters v. U.S., 670 F.3d 1221, 1229-30 (Fed. Cir. 2012) (citation omitted); see also Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1673 (2010) (finding that enhancements to the lodestar figure may be awarded in only "rare" and "exceptional" circumstances). Bayer has not requested, and the Court does not find, a basis to make an adjustment to the lodestar.

e. Costs

At Dow's request the costs associated with Dow's fee petition will be separately decided in conjunction with Dow's bill of costs (D.I. 367). Dow originally sought $299,047.69 in costs in its refiled fee petition (D.I. 323). Bicks Aff. at 12. These costs

have now been submitted through a bill of costs and **Dow has already subtracted costs from the fee petition. See** Dow's July 3, 2014 **Reply Br. at 20, n. 13 (D.I. 245) (noting that the Court should subtract costs from the original fee petition); see also Dow's Nov. 17, 2014 Supp. Decl. (D.I. 359) (costs not included in fee calculation).**

In sum, the Court will deduct **$95,702.49 incurred in Bayer I from the $5,857,639.28 requested by Dow**. Therefore, the Court recommends an award of **$5,761,936.79** in attorneys' fees. The Court also recommends that Dow be permitted to update its claimed fees if this Report and Recommendation is adopted.

Conclusion

Accordingly, for all the foregoing reasons, it is this 5th day of January, 2015, respectfully recommended that Dow's Motion for Fees and Costs as Prevailing Party be GRANTED in part and DENIED in part. It is respectfully recommended that Dow's motion be granted to the extent it asks the Court to find that this is an "exceptional case" within the meaning of 35 U.S.C. § 285. It is also respectfully recommended that Dow be awarded a substantial sum in attorney's fees. **It is only recommended that Dow's motion be denied to the extent the motion asks for the reimbursement of the fees Dow incurred before June 29, 2012. This deduction has** already been taken into account in the Court's computation that Dow should be awarded **$5,761,936.79** in fees. Last, the Court

recommends that Dow be permitted to update its claimed fees if this Report and Recommendation is adopted.

Pursuant to Fed. R. Civ. P. 72 and L. Civ. R. 72.1(c)(2), the parties **ordinarily** have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file any objections. **Pursuant to the Court's December 29, 2014 Order (D.I. 379), this deadline has been extended to January 22, 2015.**

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge